UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

KARL ROE,

      Plaintiff,

v.

SHOE SHOW, INC.,

      Defendant.

Civil Action No.

**JURY TRIAL DEMANDED**

## CIVIL ACTION COMPLAINT

Plaintiff Karl Roe ("Mr. Roe" or "Plaintiff") hereby complains and alleges against Defendant Shoe Show, Inc. ("Defendant") the following:

## INTRODUCTION

1. Mr. Roe brings this action against Defendant for violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); and North Carolina common law.

2. Defendant unlawfully interfered with Mr. Roe's right to take job-protected leave and terminated him based on, *inter alia*, Mr. Roe's actual or perceived disabilities,

record of disabilities, his need for job-protected leave, and/or his requests for reasonable accommodations.

## THE PARTIES

3. Plaintiff Karl Roe is a citizen of the United States and subject to the jurisdiction of this Court.

4. Defendant Shoe Show, Inc. is a North Carolina corporation with headquarters in Concord, North Carolina, doing business as a footwear retailer across North Carolina and the United States. Defendant acts by and through its executives, owners, managers, and other agents.

## JURISDICTION AND VENUE

5. This action arises under federal statutes including the FMLA and ADA. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims brought herein constitute a federal question under the laws of the United States.

6. This Court has supplemental jurisdiction over Mr. Roe's state law claims pursuant to 28 U.S. Code § 1367 because they arise out of the same circumstances as his federal claims and are based upon a common nucleus of operative fact.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant conducts business in this district and is subject to personal jurisdiction in this district for the purposes of this action.

## ADMINISTRATIVE EXHAUSTION

8. At all times relevant to this action, Mr. Roe was an "employee" covered by the protections of the ADA.

9. Defendant employed at least 15 employees at all relevant times.

10. Defendant is an "employer" within the meaning of the ADA.

11. Mr. Roe satisfied his obligation to exhaust his administrative remedies by timely filing Charge(s) of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation. On September 10, 2020, the EEOC issued a Notice of Suit Rights and Mr. Roe timely brings this action within ninety (90) days of his receipt thereof.

12. Mr. Roe has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTUAL ALLEGATIONS

13. Defendant is a footwear retailer with over 1000 locations.

14. In 1999, Mr. Roe was hired and began work for Defendant as a footwear buyer.

15. During times relevant to this action, Mr. Roe's direct supervisor was the president of Defendant, Lisa Tucker ("Tucker").

16. Mr. Roe was responsible for footwear categories that generated over $200 million in annual sales.

17. In or about January of 2018, Mr. Roe fell asleep at his desk while at work.

18. Approximately two days later (in or about January of 2018), Mr. Roe admitted himself to an inpatient treatment center for alcohol addiction.

19. In or about January through February of 2018, Mr. Roe completed a 28-day inpatient treatment program and was not able to work during this time.

20. Mr. Roe's leave for inpatient alcohol addiction treatment qualified for protection under the FMLA ("FMLA-qualifying leave"), however, Defendant did not provide Mr. Roe with an FMLA eligibility notice or rights and responsibilities notice (required to be in writing).

21. In or about February of 2018, after completing the inpatient treatment program, Mr. Roe discussed his return to work with Tucker and Jay Manning, Human Resources.

22. Mr. Roe planned to attend Alcoholics Anonymous ("AA") meetings and have them documented; he also registered for Soberlink, a detection device system that measures and reports blood alcohol concentration ("BAC") three times a day (the costs of which Mr. Roe paid for himself).

23. Beginning on or about March 3, 2018, three times a day Soberlink measured Mr. Roe's BAC and sent reports to Tucker by text message and email (reports were also sent to Mr. Roe and his daughter).

24. Mr. Roe continued using the Soberlink system, sending Tucker three reports a day, until January 31, 2019 (after approximately one year), as intended.

25. Mr. Roe was open about his alcohol addiction and recovery with Tucker and others at Defendant's corporate office. Mr. Roe displayed Alcoholics Anonymous chips on his desk, in view of anyone walking by his office.

26. During two consecutive weeks in August of 2019, Mr. Roe set a company record for athletics ($6 million) as well as setting a company record for sales in athletic footwear for the month of August.

27. On September 3, 2019, Mr. Roe went to his doctor to receive fluids and was advised not to drive. Later that day he began having seizures.

28. On or about September 4, 2019, early in the morning, Mr. Roe was admitted to the emergency room and continued having seizures. Shortly afterwards, he was moved to the intensive care unit ("ICU").

29. Mr. Roe's daughter provided Tucker email updates of Mr. Roe's status from the time he first entered the hospital.

30. On September 4, 2019, Mr. Roe's daughter emailed Tucker that Mr. Roe was still in the ICU and "he will probably be here for the next couple of days."

31. Defendant failed to provide Mr. Roe with the FMLA's required eligibility notice or rights and responsibilities notice with respect to his overnight stay in the hospital beginning on or about September 4, 2019 (FMLA-qualifying leave).

32. On September 8, 2019, Mr. Roe's daughter emailed Tucker that Mr. Roe's doctor was helping Mr. Roe with potentially attending treatment again (as Mr. Roe had done in 2018 for his alcohol addiction, described *infra*).

33. On or about September 9, 2019, while still in the hospital, Mr. Roe himself spoke with Tucker over the phone and notified her that he wanted to go back to inpatient alcohol addiction treatment.

34. In response to Mr. Roe expressing a desire to go to inpatient alcohol treatment (on or about September 9, 2019), Tucker told Mr. Roe that if he went to treatment, he would not have his job any longer. Tucker also said that Mr. Roe was costing her millions by Mr. Roe being in the hospital.

35. Despite Mr. Roe expressing a need for FMLA-qualifying leave (inpatient treatment), Defendant again failed to provide Mr. Roe with the FMLA's required eligibility notice or rights and responsibilities notice.

36. On or about September 10, 2019, Mr. Roe was discharged from the hospital and flew to Florida that same day to begin 30 days of inpatient treatment for alcohol addiction.

37. Mr. Roe provided Tucker updates during his inpatient treatment, including Mr. Roe's expected ability to return to work on October 11, 2019.

38. Defendant failed to reinstate Mr. Roe when he was able to return to work following his FMLA-qualifying leave.

39. On or about October 15, 2019, after Mr. Roe successfully completed inpatient treatment, Tucker met with Mr. Roe and told him he could not return to work and was terminated.

40. Mr. Roe contacted an employee of Defendant in health benefits, who informed Mr. Roe that Defendant's system reflected Mr. Roe being terminated effective September 9, 2019, a date which was:

    a. During Mr. Roe's overnight stay in the hospital (FMLA-qualifying leave); and

    b. Immediately after Tucker was informed that Mr. Roe may undergo inpatient treatment again (FMLA-qualifying leave).

41. In Defendant's Position Statement to the EEOC in this matter (in response to Mr. Roe's Charge of Discrimination), Defendant claimed Mr. Roe was terminated for not performing Soberlink daily, however the Soberlink system was only intended to be for one year (which Mr. Roe completed), after which Mr. Roe went off Soberlink for several months.

42. Mr. Roe therefore believes and avers that Defendant unlawfully interfered with his right to take job-protected leave and terminated him based on, *inter alia*, Mr. Roe's actual or perceived disabilities, record of disabilities, his need for job-protected leave, and/or his requests for reasonable accommodations.

## **FIRST CLAIM FOR RELIEF**
**The Family and Medical Leave Act of 1993 ("FMLA")**
**([1] Interference and [2] Retaliation)**

43. The foregoing paragraphs are incorporated herein as if set forth in full.

44. At all relevant times, Defendant employed more than 50 employees within 75 miles of its headquarters in Concord, North Carolina.

7

Case 3:20-cv-00686-FDW-DSC   Document 1   Filed 12/10/20   Page 7 of 13

45. At all relevant times, Defendant was an "employer" under the FMLA.

46. Prior to Mr. Roe's inpatient alcohol treatment in 2018 (from January until February), he had been employed with Defendant for at least 12 months and had performed at least 1,250 hours of service for Defendant during the 12-month period preceding the time of his medical leave.

47. Prior to Mr. Roe's overnight hospitalization and subsequent inpatient alcohol treatment in 2019 (September until October), he had been employed with Defendant for at least 12 months and had performed at least 1,250 hours of service for Defendant during the 12-month period preceding the time of his medical leave.

48. At all relevant times, Mr. Roe was an "eligible employee" under the FMLA.

49. Mr. Roe was entitled to take up to 12 weeks of job-protected leave under the FMLA.

50. Mr. Roe's alcohol addiction was a serious health condition entitling him to FMLA-protected leave for inpatient care. 29 C.F.R. § 825.113-14.

51. Mr. Roe's medical treatment and hospitalization from on or about September 3, 2019 until September 10, 2019, was a serious health condition entitling him to FMLA-protected leave. 29 C.F.R. § 825.113-14.

52. Under the FMLA, once an employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer is required, within five business days, to:

a. Notify the employee of the employee's eligibility to take FMLA leave; and

   b. Specify the employee's FMLA rights, expectations, and obligations. 29 C.F.R. § 825.300.

53. Mr. Roe was unable to work while receiving inpatient care for his alcohol addiction for approximately one month in 2018 (from January until February), however Defendant failed to properly notify Mr. Roe as to his FMLA eligibility, rights, expectations and obligations.

54. Again, in September of 2019, Mr. Roe was unable to work due to a serious medical condition that required overnight, inpatient care, however Defendant failed to properly notify Mr. Roe as to his FMLA eligibility, rights, expectations and obligations.

55. Defendant failed to reinstate Mr. Roe after FMLA-qualifying leave from on or about September 4, 2019 through October 10, 2019.

56. Defendant apparently terminated Mr. Roe while Mr. Roe was still in the hospital during FMLA protected leave.

57. Defendant interfered with Mr. Roe's FMLA rights by failing to provide required FMLA notices, terminating Mr. Roe while he was on leave protected by the FMLA, and failing to reinstate Mr. Roe upon his return from FMLA-qualifying leave.

58. Defendant retaliated against Mr. Roe by terminating him for taking FMLA-qualifying leave and expressing a need for FMLA-qualifying leave.

59. Defendant's actions were in violation of the FMLA.

## SECOND CLAIM FOR RELIEF
**Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA")**
**([1] Discrimination; [2] Failure to Accommodate; [3] Retaliation)**

60. The foregoing paragraphs are incorporated herein as if set forth in full.

61. The ADA protects individuals who: (i) have a physical or mental impairment that substantially limits one or more major life activities; (ii) have a record of such an impairment; or (iii) are regarded as having such an impairment.

62. Mr. Roe suffers from alcohol addiction and related medical issues, which sometimes affect his ability to work, drive, think, and other bodily functions, such as while suffering from seizures or while undergoing inpatient alcohol treatment.

63. Mr. Roe was able to perform the essential functions of his job with Defendant.

64. Mr. Roe is a qualified individual with a disability, as defined by the ADA.

65. At times, Mr. Roe required reasonable accommodations due to his health conditions, such as limited time off work for medical care.

66. Mr. Roe requested and required time off in connection with his health conditions for approximately one month in 2018, from in or about January through February.

67. Again, in 2019, from in or about September through October, Mr. Roe requested and required time off in connection with his health conditions.

68. On September 4, 2019, Defendant (through Tucker) became aware that Mr. Roe was undergoing seizures and being treated in a hospital's intensive care unit.

69. On September 8, 2019, Defendant (through Tucker) became aware that Mr. Roe may require additional time off work to attend inpatient treatment for his alcohol addiction.

70. Defendant failed to engage in the interactive process regarding Mr. Roe's disability-related reasonable accommodation requests in 2019.

71. Instead, Defendant promptly terminated Mr. Roe, apparently while Mr. Roe was still in the hospital on September 9, 2019.

72. Defendant expressed hostility towards Mr. Roe's need for alcohol addiction treatment, posting a memo including his picture with "No Trespassing" verbiage while he was still in treatment.

73. Defendant discriminated against Mr. Roe and terminated him for his actual disabilities, perceived disabilities, and/or record of disabilities.

74. Defendant failed to accommodate Mr. Roe in the form of limited time off to treat his medical conditions.

75. Defendant retaliated against Mr. Roe for requesting reasonable accommodations, an activity protected under the ADA.

76. Defendant's actions were in violation of the ADA.

### THIRD CLAIM FOR RELIEF
### North Carolina Common Law
### (Wrongful Discharge in Violation of Public Policy)

77. The foregoing paragraphs are incorporated herein as if set forth in full.

78. The declared public policy of North Carolina prohibits discrimination in employment based on handicap. North Carolina Equal Employment Practices Act, N.C. Gen. Stat. Ann. § 143-422.1 *et. al.* ("NCEEPA").

79. Defendant discriminated against Mr. Roe and terminated him for his actual disabilities, perceived disabilities, and/or record of disabilities.

80. Defendant's conduct constituted wrongful discharge in violation of North Carolina law and public policy. *See Egler v. Am. Airlines, Inc.*, No. 5:17-CV-73-FL, at *7 (E.D.N.C. Feb. 21, 2018) ("courts…have interpreted NCEEPA to provide a basis for a common law wrongful discharge claim based upon discrimination due to disability").

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Karl Roe respectfully requests this Court enter judgment in his favor and grant him the following relief:

(1.) Order Defendant to compensate Mr. Roe, reimburse him, and make him whole for any and all pay and benefits he would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary/pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

(2.) Award Mr. Roe any and all other compensatory damages to make him whole for Defendant's illegal actions, including for emotional distress / pain and suffering;

(3.) Award Mr. Roe liquidated damages for Defendant's willful violations;

12

(4.) Order Defendant to pay punitive damages to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

(5.) Award Mr. Roe all reasonable costs and attorneys' fees incurred in connection with this action;

(6.) Award Mr. Roe injunctive relief to prohibit Defendant's further unlawful conduct in the future;

(7.) Award Mr. Roe pre-judgment and post-judgment interest;

(8.) Order that the costs of this action be taxed against Defendant;

(9.) Award Mr. Roe such other and further equitable and legal relief as available and appropriate under the circumstances; and

(10.) Grant Mr. Roe a trial of this matter by a jury.

Respectfully submitted,

*/s/ Michael C. Harman*
Michael C. Harman
**Harman Law**
8712 Lindholm Dr., Ste 300,
Huntersville, North Carolina 28078
Telephone: 704.885.5550
E-Mail: michael@harmanlawnc.com
*Attorney for Plaintiff*